## Richmond

R. E. INGRAM, EXECUTOR OF D. W. OWEN, DECEASED,
v. J. C. HARRIS.

April 10, 1939.

Reheard November 20, 1939.

Record No. 2050.

Present, All the Justices.

*McKinney & Settle,* for the plaintiff in error.

*Tuck & Mitchell* and *William Leigh, Jr.,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In February, 1938, R. E. Ingram, executor of the estate of D. W. Owen, deceased, instituted suit against J. C. Harris to recover the balance due on a sealed promise to pay a debt dated August 9, 1923, payable on demand. The defendant below filed a plea of the statute of limitations, alleging that the instrument sued on was barred by the ten-year limitation. The excutor then gave notice under the statute (Code, section 5812, as amended) of his intention to rely upon the debtor's promise in writing, made April 16, 1930, to pay the instrument. The defendant filed another plea of the statute of limitations, alleging that the claim sued on was barred five years after the date of the new promise.

Upon the submission of all questions of law and fact without the intervention of a jury, the trial court sustained the plea of the statute of limitations and entered a final judgment for the defendant. The executor has obtained this writ to review that judgment.

The defendant in error (the defendant below) concedes that the letter upon which the executor relies is a sufficient "acknowledgment in writing, from which a promise of payment may be implied," (Code, section 5812), and the only question presented is whether the limitation of ten years upon the sealed instrument or that of five yars upon the new promise in writing (Code, section 5810) governs.

The question presented is of first impression in this State. Its decision turns upon a proper interpretation of Code, section 5812, as amended by the Acts of 1930, ch. 213, page 565, which reads as follows:

"If any person against whom the right shall have so accrued on an award, or any such contract, shall, by writing signed by him or his agent, promise payment of money on such award or contract, the person to whom the right shall have so accrued may maintain an action

for the money so promised, within such number of years after such promise, as it might be maintained under section fifty-eight hundred and ten, if such promise were the original cause of action. The plaintiff may sue on such promise or on the original cause of action, except that where the promise is of such a nature as to merge the original cause of action, then the action shall be only on the promise. If the action be on the original cause of action, and the defendant files a plea under section fifty-eight hundred and ten, the plaintiff shall be allowed to reply specially to such promise, or he may, without replying specially, show such promise in evidence to repel the bar of the plea, provided he shall have given the defendant reasonable notice before the trial of his intention to rely on such promise. An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise in the meaning of this section. When a debtor is adjudicated a bankrupt or discharged in a bankruptcy proceeding any promise to pay such debt, after such adjudication or discharge, shall be in writing for any action at law or in equity to be maintained thereupon."

The plaintiff in error insists that under a proper interpretation of this section the effect of the new promise was to fix a new period from which the statute of limitations began to run on the original sealed promise, and that the limitation is that of ten years from the date of the new promise.

The defendant in error contends that the limitation applicable to the new written promise governs, and that suit was barred five years thereafter.

According to the great weight of authority, "A new promise, made before a debt is barred by the statute of limitations, is held not to create a new and substantive contract, but to be merely evidence of an existing liability, and to fix a new date from which the statute runs." 17 R. C. L. Limitation of Actions, section 254, page 895.

"Like part payment*, an acknowledgment or new promise fixes a point of time from which limitations begin to run anew. If such acknowledgment or promise is made before the bar of the statute has become complete it starts the statute anew from the date of the promise or acknowledgment and against the original claim." 37 C. J., section 618, pp. 1139, 1140.

In Burks' Pleading and Practice (3d Ed.), section 215, pp. 375, 376, it is said: "The effect of the new promise or acknowledgment is not to stop the running of the statute on the old promise, but to fix a new period from which the statute will begin to run on the old promise, and, unless the new promise amounts to a novation of the debt, the limitation on the new promise will be the same as on the old in the absence of language in the statute showing a different intent."

In Wood on Limitations (4th Ed.), Vol. 1, section 81, p. 432, the author says: "An acknowledgment or promise made before the statute has run vitalizes the old debt for another statutory period dating from the time of the acknowledgment or promise, while an acknowledgment made after the statute has run gives a new cause of action, for which the old debt is a consideration."

See also, *St. John* v. *Garrow*, 4 Port. (Ala.), 223, 29 Am. Dec. 280; *Cox* v. *Monday*, 264 Ky. 805, 95 S. W. (2d) 785, 787; *National Cycle Mfg. Co.* v. *San Diego Cycle Co.*, 9 Cal. App. 111, 98 P. 64; *Sennott* v. *Horner*, 30 Ill. 429; *Webb* v. *Carter*, 62 Ga. 415; *Sammons* v. *Nabers*, 186 Ga. 161, 197 S. E. 284, 286; *Copeland* v. *Collins*, 122 N. C. 619, 30 S. E. 315; *Griffin* v. *Lear*, 123 Wash. 191, 212 P. 271; *Bayliss* v. *Street*, 51 Iowa 627, 2 N. W. 437.

The holding that the new promise merely re-vitalizes the old debt and does not create a new and substantive contract is based upon the theory that the statute of limitations does not extinguish the old debt, but merely

---

*Part payment does not remove the bar of the statute of limitations in Virginia. *Quackenbush* v. *Isley*, 154 Va. 407, 153 S. E. 818.

bars or suspends recovery thereon. *Wilson* v. *Butt*, 168 Va. 259, 267, 190 S. E. 260, 109 A. L. R. 1434.

In the recent case of *Sammons* v. *Nabers, supra,* the highest court of Georgia held that a written acknowledgment or recognition of an original sealed obligation, revives or extends such original obligation for twenty years (the period of time during which a sealed instrument would run) from the date of the acknowledgment.

A review of the history of the Virginia statute is helpful. Code, section 5812, had its origin in the Act of 1838, pp. 73, 74, ch. 95, section 1. After providing that a written promise or acknowledgment shall be required to take actions of debt or case out of the statute of limitations, the act says: *"And provided also,* that every such written promise or acknowledgment shall be held and taken to be a drawing down of the original debt or contract to the date of the said promise or acknowledgment."

The Code of 1849, p. 592, ch. 149, section 7, provides as follows: "If any person, against whom the right shall have so accrued on an award, or on any such contract, shall, by writing signed by him or his agent, promise payment of money on such award or contract, the person to whom the right shall have so accrued may maintain an action for the money so promised, within such number of years after the said promise, as it might originally have been maintained within upon the award or contract, and the plaintiff may either sue on such promise, or on the original cause of action, * * *."

The Code of 1860, p. 637, ch. 149, section 7, and the Code of 1873, p. 1000, ch. 146, section 10, shows no change in this statute.

Down to this point it is perfectly clear, we think, that after a new promise the statute of limitations began anew and ran for the period applicable to the original contract. In other words, the new promise was "a drawing down of the original debt or contract to the date" of the new promise (Acts 1838, *supra*), or suit could be maintained

"within such number of years after the said [new] promise, as it might originally have been maintained within upon the [old] award or contract." Codes 1849, 1860, 1873, *supra*.

The revisors of the Code of 1887 (section 2922) gave to that part of this section now under consideration its present phraseology, by providing that in case of a new promise action might be brought "within such number of years after such promise, as it might be maintained under section 2920 [Code 1919, section 5810], if such promise were the original cause of action."

The revisors of the Code of 1919 adopted this language without change. Nor did the Act of 1930, page 565, affect that part of the section now under discussion.

The real question for determination then is, did the revisors of the Code of 1887 intend merely to rephrase the section as written in the Code of 1849, or did they intend to change the law, that is, the meaning of the statute?

Judge E. C. Burks, one of the revisors of the Code of 1887, in his address before the Virginia State Bar Association (Reports of Virginia State Bar Asso., Vol. IV (1891), pp. 109ff) observes: "Let me premise that the expositor of the Code should keep in mind the rule of construction, that in a general revision of the statutes of a state the change of phraseology in a former statute does not *necessarily* imply an intention to change the law—that is, its meaning. On the contrary, the established rule is, that 'the old law was not intended to be altered, unless such intention plainly appears in the new Code.'" Citing *Parramore* v. *Taylor*, 11 Gratt. (52 Va.) 220, p. 242; *Owners of The Wenonah* v. *Bragdon*, 21 Gratt. (62 Va.) 685, p. 695. See also, *Harrison* v. *Wissler*, 98 Va. 597, 600, 36 S. E. 982; *Puckett* v. *Mullins*, 106 Va. 248, 251, 55 S. E. 676; *Hamilton* v. *Commonwealth*, 143 Va. 572, 577, 130 S. E. 383; *Norfolk & Portsmouth Bar Ass'n* v. *Drewry*, 161 Va. 833, 841, 172 S. E. 282.

In the same address Judge Burks points out (Reports of Virginia State Bar Asso., Vol. IV (1891), pp. 132-135) a

number of changes which the revisors had made in the various statutes of limitations: For instance, he notes the change in the limitations on sealed instruments and on store accounts. But no mention is made of any intended change in section 2922. If the revisors had intended to make such an important change in the meaning of this statute, as is here contended for by the defendant in error, surely Judge Burks would have made some reference to it, especially since he spoke of changes effected in other statutes of limitations.

■ Our conclusion, then, is that the revisors of the Code of 1887 did not intend to change the meaning of the law as formerly written, but intended to change merely the phraseology of this section, and that when the revised section provided that suit might be brought "within such number of years after such promise, as it might be maintained under section 2920, *if such promise were the original cause of action*," the italicized words mean, "if *the date of* such promise were the *date of the accrual of the* original cause of action," that is, "if the original cause of action had accrued at the date of such promise." These words are not intended to mean, as held by the lower court, that the form of the new promise (whether sealed or merely written) fixes the limitation of an action on the original contract.

■ We think, therefore, that the lower court erred in holding in the instant case that the right to institute suit on the original sealed instrument was barred by the statute of limitations five years after the date of the written new promise. The plea of the statute of limitations should have been stricken out.

Since the record does not disclose whether or not there is any defense on the merits, the judgment of the trial court will be reversed and the case remanded for a new trial.

*Reversed and remanded.*

*On Rehearing, November 20, 1939.*

GREGORY, J., delivered the opinion of the court.

An opinion was handed down in this case at the April, 1939, session of this court. A petition to rehear was duly filed and granted. At the October, 1939, session the case was reheard and submitted upon oral argument and briefs. After careful and mature consideration the court adheres to its former opinion.

*Reversed and remanded.*

HUDGINS, J., dissenting.

It is conceded that the new period of limitation begins to run from the date of the new promise. The vital question presented is whether the new period of limitation is to be determined by the original written evidence of the debt, *which is under seal,* or by the new written promise, *which is not under seal.*

The answer to the question is found in the language used in Code, sec. 5812, as amended by Acts 1930, ch. 213. The pertinent provision is: "The person to whom the right shall have so accrued may maintain an action for the money so promised, within such number of years *after such (new) promise* as it might be maintained under sec. 5810, *if such (new) promise were the original cause of action.*" (Italics supplied.)

This language is clear and unambiguous. It needs no construction. The authorities cited in the majority opinion from other jurisdictions are cases construing the language of the statutes in those jurisdictions, which are quite different from the language used by the Virginia legislature. The fact that Judge Burks, the elder, in his address, failed to comment on the change of the language of the old and the new statute on the subject does not change the meaning of the words actually used. " 'While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the Legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the Legislature has used words of a plain and defi-

nite import, the court cannot put upon them a construction which amounts to holding the Legislature did not mean what it has actually expressed.'" *Floyd* v. *Harding*, 28 Gratt. (69 Va.)' 401, 405. "'It is elementary that it is not permissible to interpret that which needs no interpretation.'" *Fairbanks, Morse & Co., et als.* v. *Town of Cape Charles, et als.*, 144 Va. 56, 62, 131 S. E. 437, 439.

Any other meaning than that indicated above compels the elimination from consideration of the phrase "if such promise were the original cause of action." This phrase and its context need no additional words to convey its true meaning. The interpolation of additional words, as done in the majority opinion, is, in effect, amending the statute, which is a function of the legislature and not the court.

There is nothing in the citation from Burks Pl. & Pract., 3d Ed., which indicates a contrary view. In sec. 215, under the subject, "Effect of new promise," Judge Burks recognized the rule in force in the majority of states. He emphasizes the fact that this rule was deduced from the construction by the courts of the language found in the statutes. He closes this phase of his discussion with this observation: "The limitation on the new promise will be the same as on the old *in the absence of language in the statute showing a different intent.*" (Italics supplied.)

This "different intent" is revealed in the language of the Virginia statute. There is nothing absurd or unreasonable in the fact that the legislature in this jurisdiction decided that it was the best policy for the people of this State to make the form of the new promise the determining factor in fixing the new period of limitation. The form of the original obligation fixes the original period of limitation. It is equally consistent for the legislature to provide that the form of the new—the additional—promise should fix the new period of limitation.

For these reasons I am constrained to dissent from the views expressed in the opinion of the majority.